IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATT BODINE, JASON BODINE, and DBS ASSOCIATES, INC., Plaintiffs, | § § § § | |
| | § | Case No. 3:20-cv-03116-G-BT |
| v. | § | |
| | § | |
| FIRST CO., JIM NATION, JEFF EVANS, RYAN BRICARELL, and DOES 1 through 100 Defendants. | § § § § | |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO TRANSFER VENUE**

Plaintiffs characterize this case as "ha[ving] suffered a number of challenges, despite the fact that it has yet to reach the discovery phase." Mot. Transfer 8 (ECF No. 32). Among other things, Plaintiffs assert that they "originally filed this action in California Superior Court," and their decision to proceed in Texas federal court "was not completely of their own choosing." *Id.* Indeed, Plaintiffs grudgingly filed their complaint in this District and Division only after the California state court determined that their claims fall within the scope of a valid and enforceable forum-selection clause that requires them to bring those claims in "a court of competent jurisdiction in Dallas, Texas." Mot. Transfer, Ex. A 4 ¶ 10 (ECF No. 32-1). Plaintiffs now move to transfer venue to the Southern District of California or, in the alternative, to sever certain claims from their case and transfer the severed claims back to California. Because the Court concludes that collateral estoppel bars the parties from relitigating the enforceability or applicability of the forum-selection

clause, the Court DENIES Plaintiffs' motion to transfer venue (ECF No. 32). The Court also declines to sever any claims from this action.

## Background

Defendant First Co., a Texas corporation, manufactures HVAC equipment and parts, but relies on contractual relationships with various representatives for distribution of that equipment and for customer service. Mot. Transfer 10. Plaintiff DBS Associates, Inc. (DBS), a California corporation owned by Plaintiffs Matt Bodine and Jason Bodine, served as a First Co. distributor for more than twenty-five years. *Id.* at 11-12; *see also* Compl. 19 (ECF No. 3). The most recent contractual agreement between First Co. and DBS, signed in 2015 (the "Agreement"), granted DBS an exclusive territory ranging from Southern California to Clark County, Nevada and allowed either party to terminate the relationship on thirty-days' notice. Mot. Transfer 11-12, 17. The Agreement also contained a "Governing Law" provision that states:

> This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of Texas. *The parties agree that any action to enforce this Agreement shall be brought in a court of competent jurisdiction in the City of Dallas, Texas and [DBS] hereby expressly consents to jurisdiction in the courts of Texas.*

Mot. Transfer, Ex. A 4 ¶ 10 (emphasis added).

According to Plaintiffs, First Co.'s CEO Defendant Jim Nation also entered into an oral agreement with the Bodines to lease, stock, and staff four warehouses, as well as supply products on a warehouse/distribution model. Mot. Transfer 12.

The Bodines contend they were expected to accept the financial risk of the oral agreement and that Nation insisted they create a new entity for this venture. *Id.* at 13. The Bodines assented and established DABCO, an unregistered but purportedly "wholly separate entity." *Id.* at 13.

First Co. subsequently severed its relationship with DBS on thirty-days' notice. *Id.* at 13-14. Six months later, First Co. and Nation "unilaterally ended their relationship with DABCO, with no notice." *Id.* at 14. First Co. refused to buy back the equipment the Bodines had stockpiled through DABCO, and the warranty for this equipment was expiring, allegedly rendering it unsellable. *Id.* at 14. As a result, the Bodines and DABCO were stuck with seven figures' worth of equipment. *Id.* at 14.

Based on this alleged conduct, the Bodines and DBS filed suit in the Superior Court of the State of California, San Diego County - Central Division, against First Co., Nation, First Co. employees Jeff Evans and Ryan Bricarell, and 100 unnamed defendants to be determined at a later date.[1] *Id.* at 8; Defs.' Resp. Mot. Transfer 7 (ECF No. 40). Plaintiffs asserted various common law claims against Defendants, including breach of oral and implied contracts with DABCO, conversion of DABCO's customers and funds, tortious interference with DABCO's prospective economic advantage, breach of fiduciary duties owed to DABCO, unjust enrichment, fraud, negligent misrepresentation, as well as violations of several

---

[1] DABCO is not a party.

California statutes, including the California Unfair Practices Act and the California Equipment Dealers Act (CEDA). 145 Defs.' Resp. App., Ex. B (ECF No. 41).

Defendants removed the case to the United States District Court for the Southern District of California and filed a motion to transfer venue or, in the alternative, to dismiss for *forum non conveniens*. Mot. Transfer 8. Upon Plaintiffs' request, the court granted leave to amend their complaint and add a nondiverse defendant. Defs.' Resp. Mot. Transfer 8. With diversity destroyed, the federal court remanded the case back to the San Diego Superior Court. *Id.*

Once back in state court, Defendants again moved to dismiss, or alternatively stay the action, based on the existence of the forum-selection clause in the Agreement's "Governing Law" provision. *Id.* Plaintiffs opposed the motion on three grounds: (1) their choice of forum in California was entitled to "substantial weight"; (2) the causes of action involving DABCO could not be litigated in Texas because they were not intertwined with the Agreement; and (3) the CEDA, under which Plaintiffs brought several causes of action, required such claims be litigated in California. 12 Defs.' Resp. App., Ex. A-1. The San Diego Superior Court disagreed with each of these contentions and stayed the case. *Id.* at 12-13.

Plaintiffs then moved for clarification of the court's ruling, questioning whether the court had enough time to rule on Defendants' motion. 17 Defs.' Resp. App., Ex. A-2. The court confirmed that its order was correct and denied Plaintiffs' ex parte request for reconsideration. 43 Defs.' Resp. App., Ex. A-3. Plaintiffs thereafter filed a motion to vacate judgment. *See* 45 Defs.' Resp. App., Ex. A-4.

While that motion was pending, Plaintiffs also appealed the court's order staying the case before abandoning the appeal four days later. *See* 132 Defs.' Resp. App., Ex. A-5; 134 Defs.' Resp. App., Ex. A-6. On October 2, 2020, the San Diego Superior Court denied Plaintiffs' motion to vacate the judgment. 136-137, Defs.' Resp. App., Ex. A-7.

Plaintiffs assert that the state court's delay in ruling on its motion to vacate the judgment "brought the case to where there were only 13 days before the Statutes of Limitations on several causes of action would expire; yet neither the judge nor the Defendants would extend the time." Mot. Transfer 8-9. This prompted Plaintiffs to file substantially the same case in this Court on October 13, 2020. *Id.* at 9; Defs.' Resp. Mot. Transfer 9. On February 9, 2021, Plaintiffs voluntarily dismissed with prejudice the California state court case against Defendants. 142 Defs.' Resp. App., Ex. A-8.

Three weeks before they dismissed their California case, Plaintiffs filed their pending motion to transfer venue to the United States District Court for the Southern District of California. Mot. Transfer 9. Plaintiffs claim that transfer back to California is appropriate because (1) the present matter is outside the scope of the forum-selection clause; (2) the forum-selection clause is unenforceable; (3) the forum-selection clause in the Agreement does not have a substantial relation to the transaction and is therefore invalid; and (4) transfer is appropriate under 28 U.S.C. § 1404. *Id.* at 24. Alternatively, Plaintiffs urge that it would be appropriate to sever

and transfer those claims arising under the CEDA and those regarding DABCO. *Id.* at 31.

Defendants filed a response (ECF No. 40) arguing that collateral estoppel bars Plaintiffs' motion to transfer because the San Diego Superior Court previously ruled that "(1) the forum-selection clause is valid and enforceable against Plaintiffs; (2) Plaintiffs' claims are so intertwined with DBS's contract with First Co. that the forum-selection clause applies to all of Plaintiff's claims; and (3) CEDA does not apply to HVAC supplies as a matter of law." Defs.' Resp. Mot. Transfer 11-12. Defendants further argue: the forum-selection clause in the Agreement applies to all of Plaintiffs' claims; the CEDA does not apply to HVAC equipment as a matter of law; Section 1404 gives great deference to the parties' choice of forum, and its analysis changes when there is a forum-selection clause; and severance is not appropriate. Plaintiffs filed a reply (ECF No. 42). Plaintiffs' Motion to Transfer is thus fully-briefed and ripe for determination.

## Legal Standards and Analysis

The Court turns first to Defendants' argument that collateral estoppel precludes the Court from revisiting the validity and applicability of the forum-selection clause in the Agreement.

To determine the preclusive effect of a state judgment in federal court, the full faith and credit statute requires courts to apply the law of the state that rendered the initial judgment. *In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) (citing 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S.

373, 380 (1985)). Under California law, the doctrine of collateral estoppel, or issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (2015). Issue preclusion applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Id.*

Here, Plaintiffs' briefing misconstrues Defendants' response as asserting res judicata, or claim preclusion, as opposed to collateral estoppel. *See* Pls.' Reply Mot. Transfer 13-15. Claim preclusion "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *DKN Holdings*, 352 P.3d at 386. In contrast to issue preclusion, claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. *Id.*

Arguing against the application of res judicata, Plaintiffs claim that the San Diego Superior Court did not render a "valid, final judgment on the substantive merits" as to the CEDA because the state court only considered whether to apply the doctrine of *forum non conveniens*. Pls.' Reply Mot. Transfer 13-14. Additionally, in their opposition to Defendants' Motion for Sanctions (ECF No. 38), Plaintiffs oppose collateral estoppel on the ground that they were not provided an opportunity to litigate the issues decided by the San Diego Superior Court, which were "made only in the [*forum non conveniens*] context." Pls.' Opp'n.

Sanctions 20-21 (ECF No. 45).

While Plaintiffs implicitly concede that they have brought the claims currently at issue against the same parties, it appears that Plaintiffs contest each other element of collateral estoppel. The Court will therefore address the remaining three elements of collateral estoppel in turn.

First, the San Diego Superior Court issued a final adjudication for the purposes of collateral estoppel. Though Plaintiffs claim that there was no final judgment in the San Diego Superior Court, Pls.' Reply 13-14, California law provides that "[f]inality for purposes of issue preclusion is not the same as the finality essential to claim preclusion." *Sabek, Inc. v. Engelhard Corp.*, 65 Cal.App.4th 992, 998 (1998). The court in *Sabek* explained—citing the more relaxed approach of the Restatement (Second) of Judgments—that requiring a final judgment in the strict sense "would invite needless duplication of effort and expense in the second action to decide the same issue, or alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish." *Id.* (internal quotation marks omitted). Instead, collateral estoppel requires only an order "sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13; *see also Border Bus. Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1564 (emphasis in original) (internal quotation marks omitted) ("[F]or purposes of issue preclusion, as opposed to res judicata, a 'final judgment' includes *any* prior adjudication of an issue in another action that is determined to

be sufficiently firm to be accorded conclusive effect."); *Hall v. City of Los Angeles*, 2013 WL 12349683, at *5 (C.D. Cal., Aug. 16, 2013), *aff'd* (9th Cir. 2014) 585 F. App'x 620 (emphasis in original) ("[A]ny language in recent cases . . . that may be interpreted to mean that an *existing* 'final judgment' is necessary to establish finality for issue preclusion, is a vestige of a pre-*Sandoval* res judicata terminology and does not accurately reflect the present state of California law.").

A prior adjudication may be considered "sufficiently firm" for courts to accord preclusive effect based on the following factors: "(1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal." *Church of Scientology Int'l v. DeCrescenzo*, 2018 WL 6016917, at *6 (C.D. Cal., May 3, 2018). In the present action, each of these factors favors conferring conclusive effect to the decision of the San Diego Superior Court.

The state court's order was not "avowedly tentative." To the contrary, the order reads with a tone of finality: "Defendants' request to stay the case is granted." *See* 12-13 Defs.' Resp. App. Supp., Ex. A-1; *see also DeCrescenzo*, 2018 WL 6016917, at *6 (finding persuasive the first court's tone of finality). And as stated, the parties were fully heard. Additionally, the San Diego Superior Court supported its decision with a well-reasoned opinion. While relatively short, the court justified its findings and conclusions with valid authority and explanations for why it granted Defendants' motion—because a forum-selection clause governed the

entirety of Plaintiffs' claims. 12-13 Defs.' Resp. App., Ex. A-1. Finally, the decision was clearly subject to appeal. Plaintiffs originally appealed the decision before voluntarily abandoning it purportedly due to concerns regarding the statutes of limitations. Mot. Transfer 8-9.

Therefore, the order of the San Diego Superior Court granting, in part, Defendants' motion to dismiss, or in the alternative stay, based on the doctrine of *forum non conveniens* is sufficiently firm to accord conclusive effect for the purpose of collateral estoppel under California law.[2] Accordingly, there is a final judgment for the purposes of collateral estoppel. Further, Plaintiffs acknowledged in their Notice of Intention to Vacate Judgment that the San Diego Superior Court's order constituted a final judgment: "The court ruled in Defendants' favor. As a result of this dismissal, the Court's ruling became a final judgment in this case." 46 Defs.' Resp. App., Ex. A-1.

Second, the issue at stake here is identical to that addressed by the San Diego

---

[2] The Court would reach the same conclusion even under the Fifth Circuit's more rigid approach to final adjudication, which "equates finality for collateral estoppel purposes with the final-decision requirement for purpose of appeal pursuant to 28 U.S.C. § 1291." *Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 229–30 (5th Cir. 2018) (per curiam). Because a plaintiff's voluntary dismissal with prejudice constitutes a retraxit—"deemed a judgment on the merits"—under California law, the San Diego Superior Court issued a final decision sufficient to satisfy § 1291. *See Torrey Pines Bank v. Superior Court*, 216 Cal.App.3d 813, 820 (1989); *see also Sec. Nat'l Ins. Co. v. City of Montebello*, 680 F. App'x 525, 527 (9th Cir. 2017) (internal quotation marks omitted) (citing *Torrey Pines Bank* for the proposition that "[d]ismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again").

Superior Court. Not only is the complaint filed in this Court nearly identical to that filed in California state court, *see United States ex rel. Gage v. Rolls-Royce N. Am., Inc.*, 760 F. App'x 314, 317 (finding persuasive for the purpose of collateral estoppel that the complaint was nearly identical to the complaint in an earlier iteration of the case), but the San Diego Superior Court addressed the specific issue currently before this Court: whether the forum-selection clause in the Agreement requires Plaintiffs to pursue their claims in Dallas, Texas. Accordingly, the issue at stake here is identical to that considered by the San Diego Superior Court.

Third, it is evident that Plaintiffs litigated—and the San Diego Superior Court necessarily decided—the scope and enforceability of the Agreements' forum-selection clause. The Ninth Circuit has recognized that an issue is actually litigated for the purpose of collateral estoppel under California law "[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Cook v. Harding*, 879 F.3d 1035, 1042 (9th Cir. 2018) (brackets in original) (internal quotation marks omitted) (quoting *People v. Sims*, 32 Cal.3d 468, 484 (1982)).

Plaintiffs aver that the only issue litigated in the San Diego Superior Court was whether relief was appropriate under the doctrine of *forum non conveniens*. Pls.' Reply Mot. Transfer 13. Expanding upon this argument in their opposition to sanctions, Plaintiffs argue that their claims under the CEDA were not actually litigated because the San Diego Superior Court: (1) only provided a single sentence regarding the CEDA; (2) did not consider each of Plaintiffs' arguments; and (3) did

not analyze whether claims regarding the CEDA and the oral agreement between Nation and the Bodines were severable. Pls.' Opp'n Sanctions 19-20.

The Court rejects Plaintiff's objections. Plaintiffs had the opportunity to litigate the issues regarding Defendants' motion to dismiss, or in the alternative stay, on the basis of *forum non conveniens*. In addition to arguing against *forum non conveniens* in their state briefing in opposition to Defendants' motion, Plaintiffs provided several pages insisting that claims involving DABCO were not subject to the relevant forum-selection clause and that California law required Plaintiffs' CEDA claims be litigated in California. *See* 82-91 Defs.' Resp. App., Ex. A-4. Counsel for Plaintiffs supplemented this response with a declaration in support consisting of copies of California law and filings with the California Secretary of State. *See id.* at 92-116. Each party then had the opportunity to orally advocate for its position at a motion hearing, in which Plaintiffs reinforced the arguments raised in their briefing. *See id.* at 70-76.

Only after hearing these extensive arguments did the San Diego Superior Court issue an opinion rejecting each of Plaintiffs' assertions and granting, in part, Defendants' motion to dismiss, or in the alternative stay the action, based on the doctrine of *forum non conveniens*. 12-13 Defs.' Resp. App., Ex. A-1. Accordingly, Plaintiffs' Motion to Transfer raises identical issues that were actually litigated in California state court. *See Murray v. Alaska Airlines, Inc.*, 237 P.3d 565, 571 (2010) (concluding that an issue was actually litigated for the purpose of collateral estoppel where an administrative judge made a decision after a fair hearing);

*Escandari v. U.S. Bank Nat'l Ass'n*, 2020 WL 1451981, at *7 (Cal. Ct. App., Mar. 25, 2020) (finding that the parties actually litigated an issue in a prior action where "[t]he issue was raised by the pleadings and expressly addressed in the motion for summary judgment, the motion was submitted to the court for determination, and the trial court expressly" ruled on the issue).

The San Diego Superior Court's determination of the issues in its opinion also was a necessary part of the judgment. If the forum-selection clause did not apply to Plaintiffs' claims regarding DABCO, or if the CEDA applied, the state court could not have enforced the forum-selection clause as to all of Plaintiffs' claims. Instead, the state court found that "Plaintiffs' claims are sufficiently intertwined with the written contracts such that resolution of Plaintiff's claims will require the court to first interpret the written agreements," *id.*, and that the CEDA does not render the forum-selection clause invalid because the equipment in question "does not fall within the CEDA's definition of equipment." *Id.* at 13.

Finally, Plaintiffs cite *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1994), in their Opposition to Sanctions to support their argument that "The Determination On CEDA for [*forum non conveniens*] Purposes Falls Outside the Re-litigation Exception." Pls.' Opp'n Sanctions 21. The Court is perplexed by this argument, as *Chick Kam Choo* stands for the proposition that a federal court must have actually decided an issue for the relitigation exception of the Anti-Injunction Act—which is not relevant in the current action—to apply. *See Chick Kam Choo*, 486 U.S. at 148.

The Court therefore concludes that the order of the San Diego Superior

Court is entitled to preclusive effect and collateral estoppel bars Plaintiffs' Motion to Transfer Venue back to California.

The Court also rejects Plaintiffs' request to sever and transfer their claims arising under the CEDA and those regarding DABCO. Pursuant to Federal Rule of Civil Procedure 21, the Court possesses discretion to sever any claim against any party. FED. R. CIV. P. 21. But the moving party bears the burden of proving that severance is necessary. *Paragon Off. Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL 4442368, at *1 (N.D. Tex. Sept. 26, 2012); *Aspen Tech., Inc. v. Kunt*, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011). In determining whether severance is necessary under Rule 21, Courts consider four elements: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Blundell v. Home Quality Care Home Health Care, Inc.*, 2017 WL 5889715, at *5 (N.D. Tex. Nov. 29, 2017).

First, as stated, Plaintiffs' claims arise out of and depend on the same transaction or occurrence—the business dispute between the Bodines and First Co. Plaintiffs present common questions of law and fact that implicate the same or similar witnesses and evidence. Severance would therefore do little to promote judicial economy. Plaintiffs also fail to prove they would be prejudiced by the Court's refusal to sever their claims. Given the prevalence of virtual proceedings—

especially in the wake of the Covid-19 pandemic—Plaintiffs can fully participate in this case remotely nearly as easily as they would if the Court were to sever and transfer select claims to California.

## Conclusion

Plaintiffs' Motion to Transfer Case out of District/Division (ECF No. 32) is DENIED.

**SO ORDERED**.

July 7, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE