IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATT BODINE, JASON BODINE, | § | |
| DBS ASSOCIATES, INC., and DABCO, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:20-cv-3116-BT |
| | § | |
| FIRST CO., JIM NATION, JEFF | § | |
| EVANS, RYAN BRICARELL, and DOES | § | |
| 1 through 100, | § | |
|     Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendants First Co., Jim Nation, Jeff Evans, and Ryan Bricarell filed a Motion to Dismiss (ECF No. 66) under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated, the Court GRANTS Defendants' Motion and DISMISSES with prejudice all claims and causes of action by Plaintiffs in this case.

## **Background**

Plaintiffs Matt and Jason Bodine (collectively, the "Bodines"), DBS Associates, Inc. (DBS), and DABCO bring this civil action against Defendants alleging negligent misrepresentation, fraud, fraudulent concealment, tortious interference, breach of the duty of good faith and fair dealing, breach of the duty of loyalty, breach of oral contract, breach of implied in fact contract, antitrust violations, and violations of the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act. Am. Compl. 1-2 (ECF No. 60).

Defendants Nation, Evans, and Bricarell are employees of Defendant First Co., a Texas corporation that manufactures parts and products for heating, ventilation, and air conditioning (HVAC) systems. *Id.* ¶¶ 5-8. First Co. manufactures parts and products and sells them to distributors, called Manufacturer's Representatives or Reps, who then sell the parts and products to contractors. *Id.* ¶ 16. DBS is a California corporation, owned by the Bodines, that served as one of First Co.'s Manufacturer's Reps from 1994 until 2018. *Id.* ¶¶ 17-24. DABCO is a warehousing business that allegedly operated as an unregistered partnership between the Bodines, DBS, and the Defendants for "almost 20 years." *Id.* ¶¶ 32, 39.

This case has already endured a tortured procedural history and protracted litigation regarding the proper forum for this dispute. *See* Mem. Op. & Order 3-6 (ECF No. 54). After the Court denied Plaintiffs' motion to transfer the case to California, it granted them leave to amend their pleadings allowing them "one final opportunity to cure any deficiencies in their Complaint." Ord. 3 (ECF No. 55). Plaintiffs then filed their Amended Complaint, the operative complaint in this case.

As best as the Court understands the prolix Amended Complaint, Plaintiffs allege that, starting in 1998, Defendants gradually increased lead times for First Co. inventory purchased by DBS in order to force Plaintiffs to enter into an unregistered partnership with Defendants. Am. Compl. ¶¶ 31-32. This partnership—called DABCO—served as an HVAC warehousing business for First Co. inventory. *Id.* ¶ 32. It is unclear when this alleged partnership began. Plaintiffs

admit that any agreement regarding DABCO was oral and "did not specify an ongoing arrangement or terms of the Parties' relationship." Pls. Resp. 28 (ECF No. 68).

Plaintiffs further allege that, beginning in 2017, Defendants launched an effort to force Plaintiffs to quit their relationships with Defendants. Am. Compl. ¶¶ 38-39. This effort to "force Plaintiffs to surrender" was allegedly waged with false statements, increased prices, and increased lead times. *Id.* ¶¶ 43-45. According to Plaintiffs, this years-long conspiracy culminated when Evans sent Bricarell to be trained by Plaintiffs on their marketing setup. *Id.* ¶¶ 49-50. After completing this training, Plaintiffs allege, "Defendants, and each of them, had decided that they had learned enough from Plaintiffs to supply a confidence level of being able to run a renamed version of DBS on their own, without DBS's founders." *Id.* ¶ 52. This, according to Plaintiffs, allowed Defendants to terminate their contract with DBS, and to end the "DABCO relationship" six months later. *Id.* ¶ 51. Plaintiffs assert that this termination, which they admit was proper under DBS's Manufacturer's Rep contract with First Co., revealed the ongoing fraudulent scheme perpetrated by Defendants. *Id.* ¶¶ 51-55.

In response to these allegations, Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint, which the Court now considers. Defendants argue that all of Plaintiffs' claims against them should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendants assert that the Bodines lack standing to assert any claims, that Plaintiffs have failed to plead fraud with the

particularity required in Rule 9(b), and that Plaintiffs generally fail to state any claim on which relief may be granted. Plaintiffs filed a timely Response, and Defendants filed a Reply. The Motion to Dismiss is thus ripe and ready for review.

## Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). However, when deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).[1]

Fraud claims, meanwhile, are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

## Analysis

Despite its length (more than 100 pages), Plaintiffs' Amended Complaint is rife with deficiencies. Accordingly, the Court first considers the threshold issue of

---

[1] The Court rejects Plaintiffs' reliance on any purported "default" rule that "[m]otions to dismiss are 'viewed with disfavor and . . . rarely granted,'" Pls. Resp. 12, as inconsistent with the applicable legal standards set forth in *Twombly*, *Iqbal*, and their progeny.

the Bodines' standing, and then considers each of the Amended Complaint's causes of action in turn. Ultimately, Plaintiffs have failed to state any plausible claim for relief, and generally fail to meet the basic standard for federal pleadings.

I.   The Bodines lack standing to bring claims based on any wrongs allegedly committed against DBS and DABCO.

Plaintiffs' Amended Complaint asserts eighteen separate causes of action "as to DBS," "as to DABCO," or "as to DBS and DABCO." *See, e.g.*, Am Compl. ¶¶ 21, 26, 67. Regarding these causes of action, Defendants argue the Amended Complaint contains a pervasive error—namely, that Plaintiffs never allege that the Bodines have standing to bring claims for injuries suffered by the corporate Plaintiffs DBS and DABCO. Defs.' Mot. 13-14.

"[I]t is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery . . . ." *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir. 1957). This remains the case even if "in an economic sense" those third parties suffered real harm. *Id.* To have standing, shareholders must possess a "direct, personal interest" in the action "independent of their status as shareholders." *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336-37 (1990).

The Amended Complaint fails to state any circumstance that might give the Bodines standing to recover for injuries suffered by DBS or DABCO. As noted, all

of the causes of action in the Complaint are only asserted either "as to DBS," "as to DABCO," or "as to DBS and DABCO." *See, e.g.*, Am Compl. ¶¶ 21, 26, 67. The Amended Complaint only contains allegations of injuries suffered by DBS and DABCO, and thus only alleges claims that belong to DBS and DABCO. The mere fact that the Bodines also allegedly suffered some economic harm as a result of Defendants' purported wrongdoing does not give the Bodines, as individuals, standing to bring claims based on wrongs done solely to DBS and DABCO.

Indeed, Plaintiffs' primary response to this deficiency is to claim that the Bodines have standing because they controlled the corporate Plaintiffs and were thus financially harmed themselves by the Defendants' alleged wrongdoing. Pls.' Resp. 13-15. But neither of these answers provides a basis for standing outside of Plaintiffs' status as owners of DBS and DABCO. The Court need not consider Plaintiffs' only remaining argument from the Response, that the Bodines were third-party beneficiaries to the contract claims, because the Amended Complaint fails to make such allegations. *See Spivey*, 197 F.3d at 774. Given that Plaintiffs have not identified any basis for the Bodines' standing to sue for injuries suffered by DBS and DABCO, all claims by the Bodines must be dismissed.

II.    Plaintiffs fail to state a claim for negligent misrepresentation, fraud, and fraudulent concealment.

Plaintiffs assert negligent misrepresentation claims as to both DABCO and DBS. Plaintiffs allege that "Defendants, and each of them, negligently misrepresented to Plaintiffs that the companies of Plaintiffs and Defendants would

work together for a long time;" "that Plaintiffs and Defendants were in a quasi-partnership together with respect to DABCO;" "that Plaintiffs and Defendants were working in good faith to make DABCO a financially successful venture;" "that DBS and FC would work together for a long time;" and "that Defendants were acting in good faith and that the role of Manufacturer's Rep that DBS held" would be available long term. Am. Compl. ¶¶ 58-69, 79-85.

Plaintiffs' fraud and fraudulent concealment claims are substantially similar. That is, Plaintiffs' fraud claim alleges that even though Defendants were entitled to cancel the DBS contract on 30 days' notice, "it was fraudulent on the part of Defendants, and each of them, to require Plaintiffs to expend time and energy on projects that Defendants would not fulfill for Plaintiffs, but would later use for Defendants' own advantage." *Id.* ¶ 97. Likewise, Plaintiffs' fraudulent concealment claim is based on the allegations that Defendants failed to disclose that the 30-day cancellation clause in the DBS contract was only included to allow First Co. to undercut DBS's business; "that Plaintiffs were encouraged to create and run DABCO under false circumstances;" and that Defendants only encouraged Plaintiffs to purchase inventory in order "to leave all of the unsellable inventory with Plaintiffs." *Id.* ¶¶ 107-13.

Defendants first argue that these claims are not pleaded with the particularity required by Rule 9(b). Defs.' Mot. 7. While the Rule 9(b) standard generally only applies to fraud claims, it also applies to negligent representation claims "based on the same set of alleged facts" as fraud claims. *Foxx v. My Vintage*

8

*Baby, Inc.*, 624 Fed. Appx. 318, 319 (5th Cir. 2015) (internal citation omitted). Such is the case here, because Plaintiffs' claims for fraud, fraudulent concealment, and negligent misrepresentation all boil down to the same allegation—that Defendants led Plaintiffs to believe that the parties would have a long business relationship while Defendants were actually plotting to cut out Plaintiffs.

Given that the Rule 9 heightened pleading standard applies to each of these three claims, they are all insufficiently pleaded. Plaintiffs never specify a particular statement, a particular speaker, or state where and when such a statement was made. *See Id.* (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.2009)). While Plaintiffs' Response points to nine paragraphs in the Amended Complaint as satisfaction of the heightened pleading requirement, Pls.' Resp. 17 n.5-6 ("Plaintiffs' first cause of action identifies conduct related to Defendant FC (FAC ¶ 61), Defendant EVANS (FAC ¶ 60, 69), Defendant BRICARELL (FAC ¶ 70), and Defendant NATION (FAC ¶ 79-81). Plaintiffs' second cause of action identifies specific conduct as to Defendant NATION (FAC ¶ 95), Defendant EVANS (FAC ¶ 95), and Defendant BRICARELL (FAC ¶ 101)."), on inspection, none of those paragraphs "identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Accordingly, each of these claims fails.

Moreover, even if the claims were sufficiently particular under the Rule 9(b) standard, they would fail the Rule 12(b)(6) pleading standard—because under the

facts alleged there can be no reasonable inference that Defendants might be liable under any theory. Initially, Plaintiffs' negligent misrepresentation claim is based only on promises of future conduct, such as promising to work together "for a long time" and "in good faith." Am. Compl. ¶¶ 58-69, 91, 107-13. But, under Texas law, a negligent misrepresentation claim "cannot be based on a promise to act in the future [and] must rather focus on misstatements of existing facts." *McGowan v. Ditech Financial, LLC*, 2018 WL 4346722, at *4 (N.D. Tex. Aug. 24, 2018). And a promise of future performance constitutes fraud "'only when made with the intention, design and purpose of deceiving, and with no intention of performing the act.'" *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 359–60 (5th Cir. 1996) (quoting *Airborne Freight Corp. v. C.R. Lee Enters.*, Inc., 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992, writ denied)). Plaintiffs' fraud and fraudulent concealment claims, based solely on an alleged generalized representation that the business relationships between Plaintiffs and Defendants would continue indefinitely, directly conflict with Plaintiffs' admission that Defendants always retained the option to terminate their relationship with Plaintiffs on 30-days' notice. Am. Compl. ¶ 15. These claims are thus implausible and cannot form a basis for relief under Texas law.

Plaintiffs' Response, which focuses on the issue of scienter and gives a rote recitation of the elements for each claim, generally fails to address the deficiencies outlined above. Pls.' Resp. 14-16. Accordingly, given that Plaintiffs have failed to

meet the particularity standard required for these three claims under Rule 9(b), and that the claims are implausible, each of them must be dismissed.

III.    <u>Plaintiffs fail to state a claim for tortious interference.</u>

Plaintiffs also assert tortious interference claims for conduct relating to both DBS and DABCO. As best the Court understands Plaintiffs' allegations, these claims are based on First Co.'s termination of the Manufacturer's Rep contract with DBS. Am. Compl. ¶¶ 136, 147. Apparently, Plaintiffs believe that this act constituted tortious interference in that it caused both DBS and DABCO to "lose all future DABCO business." *Id.* In their Motion to Dismiss, Defendants assert that "Plaintiffs have failed to properly plead almost every element of their tortious interference claims." Defs.' Mot. 21.

In order to properly plead a claim of tortious interference, a plaintiff must allege that "there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; . . . [and that] the defendant's conduct was independently tortious or unlawful . . . ." *Coinmach Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909, 923 (Tex. 2013). Merely pleading "the bare possibility of future business relationships" does not satisfy the pleading burden. *C & K Trucking LLC v. Ardent Mills LLC,* 2021 WL 211547, at *7 (N.D. Tex. Jan. 20, 2021).

Plaintiffs have failed to allege facts meeting either of these requirements. Stating that Plaintiffs have lost out on "all future DABCO business" does nothing more than assert the bare possibility of future business relationships. In addition,

the Amended Complaint alleges no independent tortious or unlawful conduct—this claim is only based on Defendants' cancellation of the DBS contract—which Plaintiffs admit was First Co.'s contractual right. Am. Compl. ¶ 15. In their Response, Plaintiffs merely restate similar vague allegations—that Plaintiffs believed they "would be conducting business . . . for years to come," and make no argument regarding their duty to allege independent tortious conduct. Pls.' Resp. 24. Accordingly, Plaintiffs have failed to state a claim for tortious interference.

IV.  <u>Plaintiffs fail to state a claim for breach of the duty of good faith and fair dealing.</u>

Plaintiffs next argue that Defendants owed them a duty of good faith and fair dealing because the imbalanced bargaining power in both the Manufacturer's Rep contract with DBS and the alleged oral contract with DABCO placed Plaintiffs into a special relationship of trust and confidence with Defendants. Am. Compl. ¶¶ 155-58, 182-84. Plaintiffs allege that Defendants breached this duty by providing DBS competitors with wholesale prices, preventing DBS from purchasing certain products, increasing lead times, and increasing prices. *Id.* ¶¶ 161-65. In their Motion to Dismiss, Defendants counter that Plaintiffs have not alleged the facts necessary to show that a duty of good faith and fair dealing was owed to any Plaintiff by any Defendant. Defs.' Mot. 13-14.

Under Texas law, "not every contractual relationship creates a duty of good faith and fair dealing." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000). Rather, such a duty arises only in "an extremely narrow class of cases," such

as when the parties are in a "special and confidential relationship." *Hux v. Southern Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016). Moreover, the relationship must exist before and apart from the contract or agreement that forms the basis of the controversy. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995). And a party's unilateral, subjective sense of trust and confidence in the opposing party is not sufficient to give rise to a special relationship and the attendant duty. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

Here, Plaintiffs allege no basis for a confidential relationship with Defendants outside of the contract or agreement that forms the basis for this lawsuit. Indeed, DBS's alleged special relationship with Defendants is predicated on its Manufacturer's Rep contract, Am Compl. ¶ 158, and DABCO's is predicated on its alleged oral contract, *Id.* ¶ 186. Plaintiffs' claims that they "had to place their trust entirely in Defendants" also fail to establish that this case is one of the rare situations in which a duty of good faith and fair dealing should be owed. While Plaintiffs' argument in its Response that a special relationship may be appropriate where parties are in unequal bargaining positions is correct, Pls.' Resp. 25, it does not absolve them of the requirement that such a relationship be alleged separate and apart from the contracts at issue here. Accordingly, Plaintiffs' good faith and fair dealing claims fail to meet the federal pleading standard.

V.     Plaintiffs fail to state a claim for breach of the duty of loyalty.

Plaintiffs next assert claims under a substantially similar cause of action based on an alleged fiduciary relationship between Defendants and DBS. Here, Plaintiffs once again assert that Defendants owed them a fiduciary duty due to "Plaintiffs['] . . . vulnerable position relative to Defendants." Am. Compl. ¶ 201. They further argue that Defendants breached this duty by terminating DBS's Manufacturer's Rep contract and then pursuing DBS's customer base. *Id.* Plaintiffs assert a similar claim based on an alleged fiduciary relationship between Defendants and DABCO. This fiduciary relationship, according to Plaintiffs, was a result of the "de facto Partnership" between Plaintiffs and Defendants, wherein Plaintiffs were dependent on Defendants in order to operate a viable business. *Id.* ¶ 210-12. Plaintiffs allege that Defendants breached this particular fiduciary duty by allowing Plaintiffs to spend money "to ascertain whether the Plaintiffs' warehousing and distribution model was successful," while planning all along to end the partnership as soon as it became profitable. *Id.* ¶ 214.

Fiduciary duties attach in formal fiduciary relationships—such as partnerships—and in special relationships of trust and confidence. *Hux,* 819 F.3d at 781. As discussed above, special relationships must be based on more than one party's unilateral, subjective sense of trust and confidence in the opposing party. *Schlumberger,* 959 S.W.2d at 177. And in order for fiduciary duties to attach, a special relationship must exist before and apart from the contract or agreement that forms the basis of the controversy. *Faircloth,* 898 S.W.2d at 280. A

14

partnership, meanwhile, is "an association of two or more persons [carrying] on a business for profit as owners . . . ." Tex. Bus. Orgs. Code § 152.052(b). Texas courts employ a multi-factor, totality-of-the-circumstances balancing test in determining whether a partnership exists. *Id.* § 152.052(a); *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 737-38 (Tex. 2020). Relevant factors include whether the alleged partners had a right to receive a share of profits of the business; whether there was an expression of an intent to form a partnership; whether the alleged partners had a right to control the business; whether the alleged partners agreed to share losses and liabilities of the business; and whether the alleged partners contributed money to the business. *Energy Transfer Partners*, 593 S.W.3d at 737.

As in the good faith and fair dealing claims, Plaintiffs have not pleaded any facts establishing that any relationship of trust and confidence existed outside of the commercial agreements that serve as the basis for this suit—DBS's Manufacturer's Rep contract and DABCO's alleged oral contract. Additionally, with respect to DABCO, Plaintiffs have failed to plead that any single factor used to determine whether partnerships exist was present in this case. Plaintiffs' have thus failed to plead any legal basis for the fiduciary duties that the Defendants allegedly breached. Therefore, as in the duty of good faith and fair dealing claims, Plaintiffs have failed to plead facts necessary to show that any special relationship, or formal fiduciary relationship, existed between Plaintiffs and Defendants.

Plaintiffs have thus failed to properly assert any cause of action based on breach of the duty of loyalty.

VI.   Plaintiffs fail to state a claim for breach of oral contract and breach of implied contract.

Plaintiffs next assert that Defendants breached an oral contract and an implied contract with DABCO. Ostensibly, these are separate claims, but in both sections of the Amended Complaint Plaintiffs reference "the oral contract" and the "implied contract," and both claims seem to be premised on the same facts. Plaintiffs appear to allege that Defendants violated this implied/oral contract by raising the price of inventory, refusing to allow Plaintiffs to purchase at pre-hike prices, selling inventory at a lower price than could Plaintiffs, refusing to allow Plaintiffs to sell commercially, increasing lead times, and ultimately ending their relationship with DABCO. Am. Compl. ¶¶ 229, 249. Defendants, in their Motion to Dismiss, argue that these allegations do not meet the federal pleading standard because they do not include the terms of the alleged contracts. Defs.' Mot. 16-17.

"A breach of contract . . . only occurs when a party fails or refuses to perform an act that it expressly promised to do." *Gonzales v. Columbia Hosp. at Med. City Dall. Subsidiary LP*, 207 F.Supp.2d 570, 575 (N.D.Tex.2002) (Solis, J.) (citing *Methodist Hosps. of Dall. v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex. App.-Dallas 1991, writ denied)). Accordingly, to plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached. *See, e.g., Watson v. Citimortgage, Inc.*, 814 F.Supp.2d 726, 732

16

(E.D.Tex.2011); *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F.Supp.2d 744, 753 (N.D.Tex.2005) (Godbey, J.). Moreover, "[a] petition in an action based on a contract must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including . . . the substance of the contract which supports the pleader's right to recover." *Bayway Servs., Inc. v. Ameri–Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (citation omitted).

The Amended Complaint alleges none of the terms of Plaintiffs' supposed contract or contracts with Defendants. And Plaintiffs provide virtually no information of substance about what any of the Defendants promised to do or not do in this contract. In fact, Plaintiffs admit in their Response to the Motion to Dismiss that because the contract "was oral, *it did not specify* an ongoing arrangement or *terms of the Parties' relationship*." Pls.' Resp. 28 (emphasis added). Because Plaintiffs have not identified any terms of the supposed contract, they have failed to identify the specific provision that was breached and have not issued a statement of the contract's substance. Accordingly, Plaintiffs have failed to properly state a claim for the breach of any contract, oral, implied, or otherwise.

VII.   <u>Plaintiffs fail to state a claim for any antitrust violations.</u>

Plaintiffs also bring a litany of antitrust claims against Defendants based on the Sherman Act, the Robinson Patman Act, the Clayton Act, and the Texas Antitrust Act. These claims are voluminous and repetitive of one another. As best the Court can discern, these claims are all essentially based on the allegation that

17

"Defendants, . . . entered into a continuing agreement, understanding, and conspiracy with [HVAC contractor LDI Mechanical, Inc.] in restraint of trade to artificially raise, fix, [and] maintain prices for HVAC equipment and parts in order to gain a greater market share." Am. Compl. ¶ 258; *see also id.* ¶¶ 272-74, 284-87, 311-16, 336-40. The crux of this alleged conspiracy is apparently that First Co., instead of selling to DBS or DABCO as a Manufacturer's Rep, would sell directly to LDI, an HVAC contractor and end user of the manufactured equipment. *See, e.g.*, *Id.* ¶¶ 260-61. In the Motion to Dismiss, Defendants argue that Plaintiffs have not alleged proper antitrust standing and have otherwise failed to plead the essential elements of any of the cited antitrust statutes.

To establish antitrust standing, a plaintiff must show "1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). This applies both to the federal antitrust statutes, and the Texas Antitrust Act. *Id.*; *McPeters v. LexisNexis*, 11 F. Supp. 3d 789, 796-97 (S.D. Tex. 2014); *Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106, at \*1 (E.D. Tex. July 14, 2005). With respect to the second requirement for antitrust standing, "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny . . . ." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). In addition, in determining whether a plaintiff is proper,

courts consider "(1) whether the plaintiff's injuries or their causal link to the defendant are speculative, (2) whether other parties have been more directly harmed, and (3) whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment." *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 730 (N.D. Tex. 2020) (quoting *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988)).

Plaintiffs do not sufficiently allege that they have suffered antitrust injury or that any of them is a proper plaintiff to bring an antitrust action against Defendants. As discussed above, Plaintiffs' chief antitrust allegation is that Defendants cut out Plaintiffs by selling directly to LDI, a contractor. In essence, then, Plaintiffs merely allege that Defendant First Co. engaged in vertical integration—when a manufacturer (First Co.) cuts out the literal middleman (Plaintiffs). But "antitrust standing is not achieved by the bare allegation, untied to anything else, that [First Co.] has integrated vertically into the distribution of its [product] in the relevant market and has become a competitor of its distributors." *Norris v. Hearst Tr.*, 500 F.3d 454, 468 (5th Cir. 2007) (internal quotation marks and citation omitted). Such an alleged injury is simply "too remote" from the alleged anticompetitive behavior to support antitrust standing. *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10-11 (1st Cir. 1999).

The remoteness of Plaintiffs' alleged injuries is also indicative of the fact that they are not proper antitrust plaintiffs. As to the first factor for determining whether a party is a proper antitrust plaintiff, Plaintiffs' alleged injury—that

contractors are not willing to buy at their price—necessarily depends on whether and to what extent Plaintiffs' customers (contractors like LDI) and their customers' customers (end users) decided not to purchase goods. This "tenuous connection between [Plaintiffs'] potential antitrust injury and the alleged misconduct presents the sort of speculative and abstract causal chain on which antitrust cannot be based." *Cont'l Auto.*, 485 F. Supp. 3d at 729.

As to the second factor, while Plaintiffs attempt to cast LDI as their competition, Plaintiffs' alleged injury is based on the notion that LDI's fellow contractors could not keep up with LDI because First Co. offered LDI preferential pricing. Am. Compl. ¶¶ 260-61. Taking these allegations as true, they only serve to show that it is those contractors that are directly facing antitrust injury here. This also speaks to the third and final factor. If Plaintiffs' allegations are true and Defendants have engaged in anti-competitive behavior, then LDI's fellow contractors may also be afforded relief—implicating the threat of multiple lawsuits and duplicative recoveries. These realities, taken together, demonstrate that LDI's fellow contractors, those actually in competition with LDI, are the only proper plaintiffs to bring an antitrust action for Defendants' alleged misconduct.

In their Response, Plaintiffs aver that LDI "essentially operated as both a wholesaler and an end-user," and so Plaintiffs were in direct competition with LDI. Pls.' Resp. 29-30. However, these assertions are belied by the Amended Complaint, wherein Plaintiffs allege repeatedly that LDI was a contractor, and therefore a customer of wholesalers and Manufacturer's Reps like Plaintiffs. *See e.g.*, Am.

Compl. ¶ 261 ("HVAC contractors *which competed* with LDI were required to purchase product from DBS's HVAC wholesalers and paid far more for products than LDI did . . . .") (emphasis added); *see also id.* ¶¶ 180, 257, 259. LDI's fellow contractors are thus the proper plaintiffs to bring these claims against First Co.

Because Plaintiffs have not properly alleged antitrust standing, they have failed to meet the pleading standard for any antitrust claim, whether brought under one of the federal statutes or the Texas Antitrust Act, and the Court need not consider whether Plaintiffs otherwise correctly pleaded their antitrust claims.

VIII.   <u>Plaintiffs fail to state a claim for violations of the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act.</u>

Plaintiffs final set of claims are premised upon Defendants' supposed violations of the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act (FPA). *See generally* Tex. Bus. & Com. Code § 57.001 *et seq*. Plaintiffs' claims are reminiscent of their other allegations—that Defendants violated the statute by terminating the contract with DBS and inducing Plaintiffs to purchase inventory. *See, e.g.*, Am. Compl. ¶¶ 353, 358, 366-67. Defendants urge the Court to dismiss these particular claims because the FPA, as a matter of law, is inapplicable to Plaintiffs' alleged facts.

Defendants are correct. Defendants accurately point out that the FPA only applies to "dealers"—persons who "sell[] or leas[e] equipment or repair parts for equipment to *end users* of the equipment." Tex. Bus. & Com. Code § 57.002(3)(A) (emphasis added). Plaintiffs, as alleged in the Amended Complaint, do not meet

this definition because they do not sell or lease anything to end users. Am. Compl. ¶¶ 17-18, 31-33. Rather, Plaintiffs sell HVAC equipment to wholesalers and contractors who then in turn sell the equipment to end users. *Id.*[2] And Plaintiffs tacitly concede this point as their Response to the Motion to Dismiss does not even address this argument. Because only a dealer can state a claim for a violation of the FPA, all of Plaintiffs' FPA claims are facially implausible. The Court need not further consider Plaintiffs FPA claims, including the parties' arguments regarding whether HVAC qualifies as "equipment" under the FPA.

---

[2] Plaintiffs' Amended Complaint presents the following diagram as an explanation of First Co. and Plaintiffs' relationship:



Am. Compl. ¶ 16.

IX.     Plaintiffs fail to state a claim against any Doe defendant.

Last, the Court may dismiss claims *sua sponte* for failure to state a claim so long as the procedure employed by the Court is fair. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007) (citations omitted). While fairness in some contexts may require notice prior to dismissal, the Court need not provide notice "as long as the plaintiff has alleged his best case." *Id*. at 643 (citation and quotation marks omitted). For the sake of fairness, the Court may also need to provide an opportunity to respond. *See id*. at 642–43.

In this case, *sua sponte* dismissal of any remaining claims against any Doe defendant is warranted. Plaintiffs make no specific allegations against any Doe defendant, whom the Amended Complaint speculates could be any "individual, corporate, agent, servant, employee, partner, associate, joint venturer, coparticipant, co-conspirator, associate or otherwise." Am. Compl. ¶ 9. Rather, Plaintiffs only generally allege on "information and belief" that "each of the DOE Defendants is also responsible in some manner for the occurrences herein alleged, and proximately caused injury and damages to Plaintiffs." *Id*. ¶ 10. Plaintiffs thus have not alleged any actions by any unknown defendants that would support any claim against them. And because Plaintiffs have had multiple opportunities to amend their claims, as discussed below, the Court *sua sponte* dismisses Plaintiffs' claims against the Doe defendants for failure to state a claim.

X.  <u>Plaintiffs have had multiple opportunities to amend their claims and so the Amended Complaint should be dismissed with prejudice.</u>

Leave to amend a complaint should "be freely granted when justice so requires." Fed. R. Civ. P. 15(a). But "granting leave to amend is not required if the plaintiff has already pleaded his 'best case.'" *Bryant v. Wells Fargo Bank*, 2018 WL 4290791, at \*4 (N.D. Tex. Aug. 23, 2018) (Rutherford, J.), (citing *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017)), *rec. adopted*, 2018 WL 4283556 (N.D. Tex. Sept. 7, 2018). And "[a] plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint." *Wiggins* 710 F. App'x at 627. Indeed, courts routinely dismiss claims with prejudice when the plaintiff has had multiple opportunities to amend. *See e.g.*, *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002); *Price v. Pinnacle Brands Inc.*, 138 F.3d 602, 608 (5th Cir.1998); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986).

Plaintiffs have amended their complaint once in this court, Order (ECF No. 55), once in California state Court, Pls.' Resp. 2 n.4, and once in California federal court, *Id.* at 2. Therefore, the Amended Complaint is the *fifth* version of Plaintiffs' complaint. Moreover, the Court has already warned Plaintiffs that the Amended Complaint would be their "one final opportunity to cure any deficiencies in their Complaint." Ord. 3 (ECF No. 55). The Court will not continue this already-protracted litigation when Plaintiffs have repeatedly failed to state claim.

## Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 66) and DISMISSES with prejudice all Plaintiffs' claims and causes of action.

**SO ORDERED**.

November 24, 2021.

REBECCA RUTHERFORD
U.S. MAGISTRATE JUDGE

25